UNITED STATES DISTRICT COURT

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BENCHMARK HOMES, INC., a<br>Nebraska corporation, | ) | 8:03CV527 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| LEGACY HOME BUILDERS, L.L.C., a<br>Nebraska limited liability company;<br>MARK VOSIKA, an individual; and<br>PRIME DESIGNS INCORPORATED, a<br>Nebraska corporation, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Benchmark Homes, Inc., sued defendants, Legacy Home Builders, L.L.C., Mark Vosika, and Prime Designs, Inc., for alleged copyright infringement. Benchmark contends defendants copied its architectural plans to build a house for Vosika, in violation of the Copyright Act. Benchmark moves for summary judgment. Defendant Legacy Home Builders opposes the motion and contends that the Vosika home plans were an independent creation.

On January 13, 2006, this court ordered the parties to submit supplemental briefs addressing whether Benchmark has standing to sue. The court finds that Benchmark does not have standing to sue under the Copyright Act. In the event the court so finds, Benchmark requests time to join the real party in interest. This request is granted.

## BACKGROUND

In June of 2003, Mark and Shirley Vosika decided to build a new home in Omaha, Nebraska, and began to research home builders.  Vosika alleges that he and his wife visited 50 to 60 homes in Omaha before selecting Legacy Home Builders.  Vosika toured a Benchmark model home called the "Hamden II."  Vosika testified that the Hamden model did not meet their needs because the bedrooms, closets, dining room, living room, and pantry were too small.  Vosika contends that Benchmark used inferior building materials and methods and did not construct homes in their desired neighborhood near the Millard High School.  On August 2, 2003, Vosika entered into an agreement with Legacy Builders for construction of a new home in the Millard Park South Subdivision.

Benchmark builds custom designed homes in and around Omaha. B3 Architects, Inc. (B3), allegedly created the Hamden architectural design for Benchmark as a work made for hire in June of 2000.  B3 registered its copyright in the Hamden work on May 11, 2001. Benchmark distributes sales materials to potential customers that contain floor plans, including a floor plan for the Hamden model.  Vosika admits that he gave Legacy a copy of the Benchmark brochure depicting the Hamden home floor plan.  Vosika testified that he never possessed or viewed any Benchmark building plans (the blueprints or architectural drawings that may actually be used to construct a home).

2

Ron Bourret, a Legacy employee, was a Benchmark employee from July 2000 to September 2001.  Bourret had access to the Hamden work when he worked at Benchmark.  When Bourret left Benchmark, he took his sales manual with him, which included promotional materials for the Hamden model home.  Bourret met with Vosika to discuss whether Legacy could build a house for Vosika.  Vosika gave Bourret a copy of a Benchmark brochure for the Hamden.  Bourret testified that he used the floorplan depicted in the brochure as a starting point for the design of Vosika's home.  The "footprint" of the Vosika home design was taken from the Hamden floorplan.

Bourret made notes on the Hamden brochure that Vosika gave to him.  He crossed off the line indicating the home was 2,961 square feet, and changed it to 3,200 square feet, because Vosika was looking for a 3,200 square foot home.  Vosika did not like the second floor of the Hamden, and wanted a completely different design for the second floor.  Bourret testified that he assumes he is the one who crossed off the floorplan for the second floor, and wrote "see 2nd floor draft" next to it.  The Hamden brochure has a drawing that depicts the front exterior of the home.  Bourret testified that he assumes he is the one who modified the drawing with a sketch of a taller roofline.

3

Bourret gave the modified Hamden brochure to Prime Designs so they could do a preliminary sketch of a home for Vosika.  Bourret testified that a preliminary sketch is done "to see if we're all thinking in the same direction.  And then we mark it all up and send it back.  And this process goes on about three different times before we finally land on the final plan." Bourret Dep. 29.

Bourret testified that like many of Legacy's customers, Vosika came to him with ideas for how they wanted their home built.  Bourret stated that Legacy came up with the design for the Vosika home based on Vosika's ideas from homes he and his wife had seen while looking around Omaha for a builder.  Bourret stated that Prime Designs created two or three drafts before settling on the final architectural drawings used to build the Vosika home.  Bourret contends that the architectural drawings for the Hamden home and the Vosika home are very different.  For example, the first floor of the Vosika home is 1519 square feet, while the Hamden's is 1673.

Benchmark CEO Jack Czerwinski testified that B3 created the Hamden for Benchmark as a work for hire.  B3 completed the work on May 2, 2000, and registered its copyright on May 11, 2001.  The Certificate of Registration lists B3 as the author of the work and the copyright claimant.  B3 purportedly assigned its cause of action against defendants to Benchmark on December 15, 2003.  In the assignment of

4

claims and causes of action, B3 "reserves its copyrights rights with respect to the Hamden architectural work itself."  Pl. Ex. C (Docket 74-13).

A nunc pro tunc assignment of copyright, in which B3 Architects assigned all of its copyright interests in the Hamden design to Benchmark, including all of its copyright rights as of June 5, 2000, and its cause of action for copyright infringement arising out of the design or construction of the Vosika home, was signed on January 19, 2006.

### 1.    Parties Authorized to Sue Under the Copyright Act

As a jurisdictional issue, standing can be raised by the court sua sponte at any time during the litigation.  Delorme v. United States, 354 F.3d 810, 815 (8th Cir. 2004) (citing Fed. R. Civ. P. 12(h)(3)).  A party invoking federal jurisdiction must show that it has met the requirements of both constitutional and prudential standing.  Delorme, 354 F.3d at 815 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).  "The burden to show standing is not a mere pleading requirement, but rather an indispensable part of the plaintiff's case."  Id. (internal quotations omitted).  Courts consider the standing doctrine in copyright cases no less than in other areas of law.
3 Melville B. Nimmer and David Nimmer, Nimmer on Copyright, § 12-02, at 12-55 (2005).

5

Article III of the United States Constitution limits the jurisdiction of federal courts to hearing "Cases" and "Controversies."  <u>Lujan</u>, 504 U.S. at 560.  While some elements of the standing doctrine are prudential considerations that are part of judicial self-government, "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."  <u>Lujan</u>, 504 U.S. at 560.  Federal courts have an independent obligation to examine their own jurisdiction, including standing, even when the parties fail to raise the issue.  <u>FW/PBS, Inc. v. City of Dallas</u>, 493 U.S. 215, 230-31, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990).

Copyright law "is a creature of statute, and the only rights that exist under copyright law are those granted by statute."  <u>Silvers v. Sony Pictures Entertainment, Inc.</u>, 402 F.3d 881, 883-84 (9th Cir. 2005) (en banc).  Architectural works are protected under the Copyright Act.  17 U.S.C. § 102(a).  Section 501(b) of the 1976 Copyright Act establishes who is authorized to sue for copyright infringement: "The legal or beneficial owner of an exclusive right[1] under a copyright is entitled . . . to

---

[1]Pursuant to § 106, which defines the exclusive rights in copyrighted works, the owner of a copyright has the exclusive rights to do and to authorize any of the following:

    (1)    to reproduce the copyrighted work in copies or phonorecords;

    (2)    to prepare derivative works based upon the copyrighted work;

institute an action for any infringement of that particular right committed while he or she is the owner of it." Silvers, 402 F.3d at 884 (citing 17 U.S.C. § 501(b)).  Thus, only parties with ownership rights in a copyright have standing to file lawsuits for its infringement.  Nimmer, § 12-02 at 12-56.

In this case, B3 owned the copyright in the Hamden work when Benchmark filed its complaint and when defendants allegedly infringed on the copyright.  B3 is the author of the work and registered the copyright in its own name.  Three days before Benchmark filed its claim, B3 attempted to assign its cause of action to Benchmark but reserved to itself its copyright rights with respect to the Hamden architectural work.

Ownership of a copyright may be transferred in whole or in part, under § 201(d) of the Copyright Act.  Silvers, 402 F.3d at 884.  The right to sue for an accrued claim, however, is not an exclusive right under

---

(3)   to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;

(4)   in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly;

(5)   in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and

(6)   in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission.

17 U.S.C. § 106.

§ 106.  Id.  Section 201(d) does not create any additional exclusive rights or create any exceptions to the rules designating who may sue for infringement under § 501(b).

In Silvers, the plaintiff wrote a script called "The Other Woman" as a work-for-hire for Frank & Bob Films.  Id. at 883.  Frank & Bob Films owned the copyright.  Id.  After it aired on TV, defendant Sony Pictures released a movie called "Stepmom," which Silvers alleged was substantially similar to her work.  Id.  Frank & Bob Films assigned the infringement cause of action to Silvers, but retained ownership of the copyright in "The Other Woman."  Silvers, 402 F.3d at 883.  Defendant moved to dismiss on the ground that Silvers lacked standing to bring an action for copyright infringement because she had no legal or beneficial ownership in the copyright.  Id.  On appeal, the Ninth Circuit ruled en banc that because Frank & Rob Films did not transfer any copyright rights to Silvers, she did not have standing to maintain the action for alleged copyright infringement.  Id. at 890.

In reaching this conclusion, the court found that the bare assignment of an accrued cause of action was impermissible under § 501(b).  Id.  The court acknowledged that substantive, exclusive rights in intellectual property may be assigned.  Id. at 888.  The court noted, however, that under § 501(b) "only the owner of an exclusive right under

8

the copyright is entitled to sue for infringement." <u>Silvers</u> 402 F.3d at 889. The right to sue for an accrued claim for infringement is not an exclusive right enumerated in § 106. <u>Id.</u> at 884. Because the plaintiff did not have any substantive copyright rights, the court found she lacked standing to sue. <u>Id.</u> at 890.

Like the plaintiff in <u>Silvers</u>, Benchmark's only property interest in this case is B3's cause of action against defendants. Thus, Benchmark does not own an exclusive right under § 106 that would allow it to sue for copyright infringement under § 501(b). Benchmark did not allege that it owned the copyright or had been granted an exclusive license to the Hamden work by B3. The record indicates that B3 retained all of the copyright rights in the Hamden when this cause of action was filed. Because Benchmark did not own any substantive rights in copyright that would allow it to file a copyright infringement claim under § 501(b), Benchmark lacked standing when the action was filed. <u>See id.</u> at 889.

Benchmark contends that <u>Silvers</u> is erroneously decided and that the Ninth Circuit's interpretation of the Copyright Act is inconsistent with the purposes of copyright law. This court finds the case persuasive because it relies on the plain language of the Copyright Act and is consistent with opinions from other courts and commentators on this issue. In <u>Eden Toys, Inc. v. Florelee Undergarment Co.</u>, 697 F.2d 27, 32

9

(2$^d$ Cir. 1982) (superseded by statute on other grounds), the court noted

that the Copyright Act only authorizes two types of claimants to sue for

copyright infringement: owners of copyrights and people who have been

granted exclusive licenses by owners of copyrights.  The court rejected

the claimant's argument that an assignment of a cause of action for

copyright infringement also provided a basis for standing:

> We do not believe that the Copyright Act permits holders of
> rights under copyrights to choose third parties to bring suits on
> their behalf.  While F.R.Civ.P. 17(a) ordinarily permits the real
> party in interest to ratify a suit brought by another party . . .
> the Copyright Law is quite specific in stating that only the
> "owner of an exclusive right under a copyright" may bring suit.

Id. n.3.  See also ABKCO Music, Inc. v. Harrisongs Music, Ltd., 944 F.2d

971, 980 (2$^d$ Cir. 1991) (citing Eden Toys, 697 F.2d at 32 n.3) ("Copyright

Act does not permit copyright holder to choose third parties to bring suits

on their behalf."); Motta v. Samuel Weiser, Inc., 768 F.2d 481, 484 (1st

Cir. 1985) (plaintiff lacks standing unless he or she can establish a

proprietary right through the chain of title to support a valid claim to the

copyright); and Nimmer, § 12-02 at 12-56 (only parties with ownership

rights in a copyright have standing to file lawsuits for its infringement).

In Althin CD Medical, Inc. v. West Suburban Kidney Center, S.C.,

874 F. Supp. 837, 842-843 (N.D. Ill. 1995), the court found that the

plaintiff lacked standing because it was merely a nonexclusive licensee.

In that case, the contracts authorized the plaintiff to use copyrighted

10

software, but the licensor retained all of the other rights.  Id. at 842-843.

The court noted that only an owner of a copyright or an exclusive licensee

has standing to sue for copyright infringement.  Id. at 842 (citing

Nimmer, § 12.02 at 12-29).  The court granted defendants' motion to

dismiss because as a mere nonexclusive licensee,[2] plaintiff lacked

standing under the Copyright Act.  Id. at 842-843.  See also I.A.E., Inc. v.

Shaver, 74 F.3d 768, 775 (7th Cir. 1996) (a holder of a nonexclusive

license has no standing to sue for copyright infringement).

"Whether an agreement transfers rights that are exclusive or

nonexclusive is governed by the substance of what was given to the

licensee and not the label that the parties put on the agreement."  Althin

CD, 874 F. Supp. at 843.  In the case at bar, B3 authorized Benchmark

to use its Hamden work to construct homes, but retained all the other

intellectual property rights.  Nothing in the record indicates that

Benchmark was granted the exclusive right to build Hamden model

homes.  Thus, Benchmark is at best a nonexclusive licensee and lacks

standing to pursue this claim.

Regarding Benchmark's contention that the Silvers analysis is

contrary to the purposes of copyright law, the court disagrees.  The

---

[2]The creator of a work does not transfer ownership of the copyright
when it grants a nonexclusive license.  I.A.E., Inc., 74 F.3d at 775.  The owner
merely permits the use of a copyrighted work in a particular manner.  Id.

11

purpose of a copyright infringement suit is to protect the copyright owner's property interest. <u>Cortner v. Israel</u>, 732 F.2d 267, 271 (2<sup>d</sup> Cir. 1984) (emphasis added). Benchmark was not the owner of the copyright in this case. Thus, a finding that Benchmark lacks standing does not undercut the rationale of the Copyright Act. Because Benchmark has no copyright interest in the Hamden plan, it lacked standing when this action was filed.[3] Benchmark's alleged injury cannot be redressed by the court, because the Copyright Act does not allow it to file a claim for the infringement of B3's copyright.

### 2.    The Attempt to Cure Lack of Standing

On January 19, 2006, B3 assigned all of its copyright interests to Benchmark, including its cause of action for copyright infringement arising out of the construction of the Vosika home.[4]  Now that

---

[3]Even if Benchmark could satisfy the constitutional requirements of standing as outlined in <u>Lujan</u>, it has not addressed the prudential elements of third party standing, which include: (1) "a close relation to the third party" and (2) "some hindrance to the third party's ability to protect his or her own interests." <u>Tasini v. New York Times Co.</u>, 184 F. Supp. 2d 350, 357 (S.D.N.Y. 2002) (quoting <u>Powers v. Ohio</u>, 499 U.S. 400, 411, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991)). Benchmark has not explained why B3 could not have filed this lawsuit and in fact asks leave of court to allow B3 to be joined as a plaintiff if the court finds that Benchmark lacks standing.

[4]The court notes that in its supplemental brief, Benchmark repeated its contention that B3 Architects created the Hamden for Benchmark as a work for hire. <u>See</u> Pl. Supp. Br. at 1. If this had actually been a work for hire, Benchmark would have owned the copyright from day one. There would have been no need for B3 to assign either a cause of action or any substantive rights because these would have already belonged to Benchmark. Furthermore, the Certificate of Registration lists B3 as the copyright claimant,

Benchmark is the owner of the Hamden copyright, it contends that it has

standing to maintain this action for copyright infringement under

§ 501(b).  Benchmark states that defendants will not be prejudiced if the

court determines that it now has standing, and it urges the court to find

it has standing in the interests of judicial economy.

"The existence of federal jurisdiction ordinarily depends on the facts

as they exist when the complaint is filed."  <u>Lujan</u>, 504 U.S. at 569, n.4

(quoting <u>Newman-Green, Inc. v. Alfonzo-Larrain</u>, 490 U.S. 826, 830, 109

S. Ct. 2218, 104 L. Ed. 2d 893 (1989)).  A court may allow the

amendment of a defective <u>allegation</u> of jurisdiction (for example, an

incorrect allegation of citizenship for diversity purposes), but not an

amendment of defects in the jurisdictional facts themselves.  <u>Newman-</u>

<u>Green</u>, 490 U.S. at 830.  If the plaintiff lacks standing at the beginning of

the lawsuit, the plaintiff cannot rightfully invoke the jurisdiction of this

court.  <u>See</u> <u>Delacroix v. Lublin Graphics, Inc.</u>, 993 F. Supp. 74, 83 (D.

Conn. 1997).

Benchmark relies on <u>Intimo, Inc. v. Briefly Stated, Inc.</u>, 948 F. Supp.

315 (S.D.N.Y. 1996) for its argument that this court may find it has

standing based on the eleventh-hour assignment of copyright rights from

B3.  In <u>Intimo</u>, the authors of the designs assigned the copyrights to

_____

not Benchmark.

13

plaintiff six months <u>before</u> plaintiff filed suit for alleged copyright infringement that occurred both before and after the assignment.  <u>Intimo</u>, 948 F. Supp. at 316 (emphasis added).  About a year after the complaint was filed, the parties were instructed to submit their pretrial documents in preparation for a court trial.  <u>Id.</u>  The plaintiff submitted an amended assignment which stated that the author had intended to assign its cause of action to plaintiff when it assigned its copyright to plaintiff.  <u>Id.</u>

The defendant alleged plaintiff lacked standing because the original assignment did not explicitly transfer the right to sue for prior copyright infringement.  <u>Id.</u>  The court found that the amended assignment was effective and that the plaintiff had standing to sue for alleged infringements that took place before the second assignment that clarified the assignor's intention to transfer the accrued cause of action.  <u>Id.</u> at 318-19.  In reaching this conclusion, the court concluded that "an assignment of interest should be recognized provided the assignment occurs before trial, the plaintiff is the real party in interest in at least one other claim, and the defendant suffers no prejudice from its recognition." <u>Id.</u> at 318 (citing <u>Dubuque Stone Prods. Co. v. Fred L. Gray Co.</u>, 356 F.2d 718, 724 (8th Cir. 1966).  <u>See also</u> <u>Infodek, Inc. v. Meredith-Webb Printing Co.</u>, 830 F. Supp. 614, 620 (N.D. Ga. 1993).

14

The plaintiff in <u>Intimo</u> held a copyright when the complaint was filed and had standing to sue for alleged violations that took place after the assignment of the copyright.  The question before the court was whether the plaintiff had standing with regard to the infringing acts that took place before the first assignment of the copyright.  <u>Id.</u> at 317.  The plaintiff was able to show that the assignment occurred before trial, that it was the real party in interest with regard to the infringements that occurred after the assignment, and that defendant suffered no prejudice. <u>Id.</u> at 320.  In the case at bar, Benchmark had no basis for standing whatsoever when the case was filed and it was not the real party in interest in any other claim.  Accordingly, <u>Intimo</u> is inapposite.

**3.     Joinder of Real Party in Interest**.

To the extent that Benchmark is found not to have standing, Benchmark requests reasonable time to join the real party in interest pursuant to Fed. R. Civ. P. 17.  The Supreme Court recognized in <u>Newman-Green</u> that there are exceptions to the general principle that the existence of federal jurisdiction depends on the facts as they exist when the complaint is filed.

One of those exceptions is Rule 21, which recognizes that parties may be dropped or added at any stage of the action.  <u>Id.</u>  Courts have avoided deciding the standing issue by allowing a plaintiff to add real

15

parties in interest as parties pursuant to Rule 21.  <u>Mullaney v. Anderson</u>, 342 U.S. 415 (1952) (union's motion to add as parties two of its members granted by Supreme Court, thus avoiding deciding the standing issue); <u>Mentor H/S, Inc. v. Medical Device Alliance, Inc.</u>, 244 F.3d 1365, 1373 (Fed. Cir. 2001)(licensee allowed to amend to join licensor as a party after the standing issue was raised sua sponte on appeal).  Rule 15(a) was invoked in <u>National Post Office Mail Handlers Local No. 305 v. U.S. Postal Service</u>, 594 F.2d 988, 991 (4th Cir. 1979), to allow a party to amend on remand to resolve a standing issue.  And Rule "17(a) provides that no action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of the action by, or joinder or substitution of, the real party in interest."  <u>Jaramillo v. Burkhart</u>, 999 F.2d 1241, 1246 (8th Cir. 1993).  Pursuant to either Rule 21, 17(a), or 15(a), Benchmark's request that it be allowed to join the real party in interest is authorized.

Here, joining B3 as a party plaintiff will not affect the litigation or prejudice defendants.  B3's damages are the same as those claimed by Benchmark.  Furthermore, no party raised the issue of standing.  It has been addressed by the court only to satisfy the court's own jurisdictional obligation.  As the court recognized in <u>Newman-Green</u>, "dismissing the

16

petition and thereby requiring the plaintiffs to start over in the District Court 'would entail needless waste and run counter to effective judicial administration.'"  490 U.S. at 902.  Accordingly, it is hereby

ORDERED that Benchmark shall have until **February 6, 2006**, to join B3.

Dated January 26, 2006.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

17