UNITED STATES DISTRICT COURT

DISTRICT OF NEBRASKA

| | |
|---|---|
| BENCHMARK HOMES, INC., a Nebraska corporation, | ) 8:03CV527 ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) |
| | ) ORDER DENYING |
| LEGACY HOME BUILDERS, L.L.C., a Nebraska limited liability company; MARK VOSIKA, an individual; and PRIME DESIGNS INCORPORATED, a Nebraska corporation, | ) PLAINTIFF'S MOTION ) FOR SUMMARY ) JUDGMENT ) ) ) |
| Defendants. | ) |

Plaintiff, Benchmark Homes, Inc.,[1] sued defendants, Legacy Home Builders, L.L.C., Mark Vosika, and Prime Designs, Inc., for alleged copyright infringement. Benchmark contends defendants copied its design plans to build a house for Vosika, in violation of the Copyright Act. Benchmark moves for summary judgment. Legacy opposes the motion and contends that the Vosika home plans were an independent creation, that the plans are not substantially similar, and that any copying involved only non-copyrightable ideas. Benchmark's motion for summary judgment is denied.

---

[1] This court previously found that Benchmark did not own the copyright in the Hamden work, because B3 Architects only assigned its cause of action to Benchmark while reserving the copyright rights to itself. (Docket 134) This court has authorized Benchmark to join B3 as a plaintiff in this suit pursuant to Fed. R. Civ. P. 15(a), 17, and 21(a), and gave Benchmark until February 6, 2006, to do so. Accordingly, for the purposes of deciding this motion, the court will assume that B3 will be joined in this suit and that B3 has a valid copyright in the Hamden work.

**BACKGROUND**

The evidence, viewed in the light most favorable to the nonmoving parties, Legacy, Mark Vosika, and Prime Designs, Inc., is:

In June of 2003, Mark and Shirley Vosika decided to build a new home in Omaha, Nebraska, and began to research home builders. Vosika alleges that he and his wife visited 50 to 60 homes in Omaha before selecting Legacy Home Builders. Vosika toured a Benchmark model home called the "Hamden II." Vosika testified that the Hamden model did not meet their needs because the bedrooms, closets, dining room, living room, and pantry were too small. Vosika contends that Benchmark used inferior building materials and methods and did not construct homes in their desired neighborhood near the Millard High School. On August 2, 2003, Vosika entered into an agreement with Legacy Builders for construction of a new home in the Millard Park South Subdivision.

Benchmark builds custom designed homes in and around Omaha. B3 allegedly created the Hamden architectural design for Benchmark in June of 2000. B3 registered its copyright in the Hamden work on May 11, 2001. Benchmark distributes sales materials to potential customers that contain floor plans, including a floor plan for the Hamden model. Vosika admits that he gave Legacy a copy of the Benchmark brochure depicting the Hamden home floor plan. Vosika testified that he never possessed or viewed any

Benchmark building plans (the blueprints or architectural drawings that may actually be used to construct a home).

Ron Bourret, a Legacy employee, was a Benchmark employee from July 2000 to September 2001. Bourret had access to the Hamden work when he worked at Benchmark. When Bourret left Benchmark, he took his sales manual with him, which included promotional materials for the Hamden model home. Bourret met with Vosika to discuss whether Legacy could build a house for Vosika. Vosika gave Bourret a copy of a Benchmark brochure for the Hamden. Bourret testified that he used the floorplan depicted in the brochure as a starting point for the design of Vosika's home. The "footprint" of the Vosika home design was taken from the Hamden floorplan.

Bourret made notes on the Hamden brochure that Vosika gave to him. He crossed off the line indicating the home was 2,961 square feet, and changed it to 3,200 square feet, because Vosika was looking for a 3,200 square foot home. Vosika did not like the second floor of the Hamden and wanted a completely different design for the second floor. Bourret testified that he assumes he is the one who crossed off the floorplan for the second floor, and wrote "see 2nd floor draft" next to it. The Hamden brochure has a drawing that depicts the front exterior of the home. Bourret testified that he assumes he is the one who modified the drawing with a sketch of a taller

3

roofline. Pl. Ex. F (Docket 74-7). Exhibit F is marked with a copyright symbol.

Bourret gave the modified Hamden brochure to Prime Designs so they could do a preliminary sketch of a home for Vosika. Bourret testified that a preliminary sketch is done "to see if we're all thinking in the same direction. And then we mark it all up and send it back. And this process goes on about three different times before we finally land on the final plan." Bourret Dep. 29.

Bourret testified that like many of Legacy's customers, Vosika came to him with ideas for how they wanted their home built. Bourret stated that Legacy came up with the design for the Vosika home based on their ideas from homes they had seen while looking around Omaha for a builder. Bourret stated that Prime Designs created two or three drafts before settling on the final architectural drawings used to build the Vosika home. Legacy paid Prime Designs $2,080.65 for these drawings. Bourret contends that the architectural drawings for the Hamden home and the Vosika home are very different. For example, the first floor of the Vosika home is 1519 square feet, while the Hamden's is 1673. The Vosika home has a large pantry, while the Hamden pantry is very small. The Vosika home has three large double windows in the great room, compared to the two triple windows and one double window in the Hamden home. These are just a few of the differences Bourret noted, which take up about five pages of his affidavit.

Marcus Behrens, the owner of defendant Prime Designs, admitted that he used the shape of the Hamden home as a template for the main floor plan. He also admitted that the shape of the foundation had "many corners" and was not a simple square or rectangle. Behrens testified that he determined the shape of the Vosika home from the Hamden floor plan depicted in deposition exhibit B, which is the same brochure that Bourret referenced in his deposition testimony as the source of the "footprint" of the Vosika home design.

## LEGAL STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980). The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that a genuine issue exists. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

In a copyright infringement case where substantial similarity is an issue, and both works are in the record, the district court may apply the substantial similarity test and grant summary judgment. Nelson v. PRN Productions, Inc., 873 F.2d 1141, 1143 (8th Cir. 1989). Because substantial similarity is a close question of fact, however, summary judgement has traditionally been frowned upon. Atkins v. Fischer, 331 F.3d 988, 994 (D.C. Cir. 2003).

**DISCUSSION**

Architectural works are protected under the Copyright Act. 17 U.S.C. § 102(a).

> An "architectural work" is the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.

17 U.S.C. § 101. See also J.R. Lazaro Builders Inc. v. R.E. Ripberger Builders, Inc., 883 F. Supp. 336, 339 (S.D. Ind. 1995) (copyright protection extends to the plans for the design of a house as well as the house itself).

In order to prevail on a copyright infringement claim, the plaintiff must prove ownership of a valid copyright and copying of original elements of the work. Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 962-63 (8th Cir. 2005). A plaintiff's copyright registration certificate is prima facie evidence that the plaintiff owns a valid copyright. 3 Melville B. Nimmer and David Nimmer, Nimmer on Copyright, § 13-01, at 13-7 (2005). B3 completed the work on May 2, 2000, and registered its copyright on May 11, 2001. The Certificate of Registration lists B3 as the author of the work and the copyright claimant. See Pl. Ex. A (Docket 1-2).

In the absence of direct evidence of copying, plaintiff may establish copying by proving: (1) that defendants had access to the copyrighted architectural work and (2) substantial similarity between the Hamden and Vosika architectural works. See Taylor Corp., 403 F.3d at 964 (citing Hartman v. Hallmark Cards, Inc., 833 F.2d 117, 120 (8th Cir. 1987). Even when there is direct evidence of copying, the plaintiff must show substantial

similarity.  See United Telephone Co. of Mo. v. Johnson Publishing Co., 855 F.2d 604, 608 (8th Cir. 1988) (citing Hartman, 833 F.2d at 120); compare M. Kramer Mfg. Co. Inc. v. Andrews, 783 F.2d 421, 455 (4th Cir. 1986) ("If there was clear proof of actual copying by the defendants, that is the end of the case.")

Plaintiffs contend that defendants had access to the copyrighted architectural work because they had a copy of the of the Hamden sales brochure, and Bourret had access to the architectural drawings while employed at Benchmark.  Legacy concedes that Vosika gave it a copy of Benchmark's brochure depicting the Hamden model, but argues that the floorplan in the brochure was insufficiently detailed to use in building a home.  It is not necessary, however, to show that defendants had access to the technical drawings described in the copyright registration.  Donald Frederick Evans & Assoc., Inc. v. Continental Homes, Inc., 785 F.2d 897, 904 (11th Cir. 1986).  If a builder constructs a substantially similar home by copying a floor plan distributed in another builder's promotional materials, this copying may infringe upon the architect's copyright interests.  See Evans, 785 F.2d at 905.  Because Legacy admits that it had access to plaintiff's promotional materials, the court finds it had access to copyrighted works.

Plaintiff next has to establish that the Hamden and Vosika homes are substantially similar. Substantial similarity means substantial similarity "not only of the general ideas but of the expressions of those ideas as well." Taylor Corp., 403 F.3d at 966 (quoting Sid & Marty Krofft Television Prods., Inc. v. McDonald's Corp., 562 F.2d 1157, 1164 (9th Cir. 1977). "First, similarity of ideas is analyzed extrinsically, focusing on objective similarities in the details of the works. Second, if there is substantial similarity in ideas, similarity of expression is evaluated using an intrinsic test depending on the response of the ordinary, reasonable person to the forms of expression." Id. (quoting Hartman, 833 F.2d at 120). Even when the works are dissimilar in many ways, these differences may be immaterial if in other respects plaintiffs can show similarity of a substantial element of their work. See Nimmer, § 13.03 at 13-61. "No plagiarist can excuse the wrong by showing how much of his work he did not pirate." Id. at 13-61 to 13-62.

Viewing the architectural drawings of the Vosika and Hamden model homes, extrinsic similarities are easily noticeable. See Pl. Ex. A, Benchmark Drawings, Docket 74-10 and Pl. Ex. G, Prime Designs Drawings, (Docket 74-8). Both home plans have a garage door in the center front of the house, with the front door immediately to the left of the garage. See Ex. A at 1 and Ex. G at 1. The outline of the main floor plans is a virtually identical inverted "L" shape. See Ex. A at 5 and Ex. G at 3. Both homes feature a

garage in the lower left hand corner and in the center front portion of the houses.  Id.  Both homes have a family room in the upper right hand portion of the floor plan, with a "nook" or "dinette" located between the family room and kitchen.  Id.  The Benchmark Hamden has a "den/study" in the lower left hand portion of the design, while the Prime Designs plan has a "music room" in the same area.  Id.  Both homes have the living and dining rooms in the same location in the center rear portion of the house.  Id.  Accordingly, the two homes have objective, extrinsic similarities.

In the second step, the court analyzes similarity of expression with an intrinsic test considering the response of an ordinary, reasonable person to the forms of expression.  Hartman, 833 F.2d at 120.  "Infringement of expression occurs only when the total concept and feel of the works in question are substantially similar."  Id.  Viewed from the front, the home designs have different rooflines.  See Ex. A at 1 and Ex. G at 1.  The Vosika home has a much larger second floor.  This also makes the views from the rear very different.  See Ex. A at 2 and Ex. G at 1.  The upper left side of the Benchmark Hamden slopes down at a steep angle, while the upper left side of the Vosika home does not.  See id.  These differences in the outward appearance of the houses are also visible in the design plans for the upper levels of the homes.

An ordinary, reasonable person could find that the total concept and feel of the works are not similar. See Hartman, 833 F.2d at 120. The overall shape of the house has significant differences in the upper level. The homes appear different when viewed from the outside. While the floorplan is virtually identical, there are differences in the overall dimensions and in the layout of the rooms. In light of these differences in the main floor and in the overall appearance of the design, there are disputed issues of material fact that preclude summary judgment on the issue of whether the home designs are substantially similar.

Because the court concludes that a question of fact exists on the issue of whether the homes are substantially similar, the court need not address Legacy's argument that the work was an independent creation or that the similarities only involved non-copyrightable ideas. Accordingly, it is hereby

ORDERED that Benchmark's motion for summary judgment (Docket 72) is denied.

Dated January 27, 2006.

> BY THE COURT:
>
> /s/ *Karen E. Schreier*
> KAREN E. SCHREIER
> UNITED STATES DISTRICT JUDGE